

# United States District Court

**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| ALLEN STEVEN WYNN | § | |
| | § | |
| V. | § | CASE NO. 4:05CV238 |
| | § | (Judge Schell/Judge Bush) |
| J.C. PENNEY CO., INC. | § | |

### REPORT AND RECOMMENDATION
### OF UNITED STATES MAGISTRATE JUDGE

Before the Court is Defendant's Motion for Summary Judgment (Docket #52).  Having considered the motion and Plaintiff's response, the Court finds as follows.

Plaintiff, who was initially proceeding *pro se*, filed his original complaint on June 20, 2005 claiming that Defendant had violated the Family Medical Leave Act, 29 U.S.C. § 2601, *et seq.* ("FMLA").  Specifically, Plaintiff alleged that Defendant intimidated and ultimately terminated him after he had taken FMLA leave due to depression following the death of his common law wife.  Plaintiff subsequently retained counsel and, on September 30, 2005, filed an amended complaint in which he added a claim under the Employee Retirement Income Security Act, 29 U.S.C. § 1001, *et seq.* ("ERISA") stating that "Defendant wrongfully discharged Plaintiff in violation of 29 U.S.C. § 1001, *et seq.*, including § 1132 and § 1140 (ERISA § 510)…." (Pl. Am. Comp., ¶ 6.02).  The Court dismissed Plaintiff's ERISA § 510 claim but granted Plaintiff leave to amend his complaint to include a claim under ERISA § 404.  To date, Plaintiff has not amended his complaint and the FMLA claim is the only claim before the Court.

### Facts

Plaintiff began working at J.C. Penney's headquarters in Plano, Texas on March 29, 1999 in the Information Technology Control Center("ITCC").  He was supervised by Ken Koralewski,

who Plaintiff contends had authority to hire and fire those under his supervision. Wynn was assigned to the communications section of the ITCC.

Plaintiff was engaged to Michelle Beumer. During their engagement, Ms. Beumer was diagnosed with cancer. Although Plaintiff and Ms. Beumer were apparently never formally married, Plaintiff claims to have held her out to be his wife and that the two were married at common law. Ms. Beumer's cancer progressed and she died on Christmas Day, 2001. Plaintiff was devastated by the loss of Ms. Beumer and sought professional psychiatric help. He was diagnosed with severe depression and Post Traumatic Stress Disorder. Due to his medical problems, Plaintiff requested and was approved for short-term disability leave with Defendant's Illness Recovery Program. He took the following three months off of work. While Plaintiff was on leave, his supervisor, Ken Koralewski, called him numerous times and pressured him to return to work.

In April, 2002, Plaintiff returned to work on a reduced schedule. His doctors progressively reduced his work restrictions until May, 2002, when Plaintiff was cleared to return to his full 12-hour shift. Upon his return to work, Plaintiff was harassed by Koralewski. Plaintiff claims that Koralewski told him that he "didn't give a damn what kind of f__ing sick leave he was on," that "milking sick leave is a fast way to get fired," and that Plaintiff "had better get [his] resume in order because [he was] on the way out the f___ing door."

Plaintiff's evidence shows that the ITCC was not exactly a pleasant place to work. There are numerous reports of managers and employees yelling and cursing at other ITCC employees. Aside from Koralewski's remarks to Plaintiff, there were apparently numerous instances of ITCC managers berating employees. There were also numerous instances of employees having verbal

altercations and using profanity. On one occasion, Ken Koralewski even invited an employee from another department to meet him in the parking lot to settle a work-related dispute. Employees of the ITCC also frequently complained that Ken Allen was verbally abusing them as well as customers. He often cursed, yelled, and dismissed employees as being "stupid" and "idiots." Ken Allen was never terminated for this behavior, although he was ultimately terminated when a female employee complained that he inappropriately touched her and made sexual comments.

Although Plaintiff and other employees had frequently complained of Allen's loud, offensive, and degrading comments, no serious action was ever taken. In August of 2001, Plaintiff had an altercation with Ken Allen, who was frequently rude and demeaning to Plaintiff. While Allen was yelling at Plaintiff, Plaintiff said "don't talk to me like that, I'm a human being," and Plaintiff invited Allen outside to settle their differences. Another associate reported that Allen had been goading Plaintiff and that Plaintiff was justified in yelling back. Allen was verbally counseled over the incident.

Plaintiff also had a confrontation with Mary Pat Cote. On June 17, 2002, Plaintiff was talking to a customer on the phone. While Plaintiff was running a test for the customer, the conversation turned to religion and Plaintiff told the customer how his religion was helping him cope with the death of Beumer. Cote approached Plaintiff and shouted in Plaintiff's ear to "get off the phone" and "shut up." Plaintiff responded by cursing at Cote and asking to be left alone. Cote later admitted that her comments were rude and inappropriate and declined an opportunity to be moved to another work station. She was never disciplined for the incident. However, following the incident, Plaintiff was verbally counseled. Plaintiff complained to Rick French and

Koralewski at the counseling session that ITCC had a "double standard" when it came to addressing incidents at the office. Plaintiff stated that he would not bother anybody if people would stop picking on him. He also stated that he no longer wanted to put up with abuse and that if he was yelled at, he would yell back. He apologized for the latter statement in writing the next day.

Plaintiff was terminated on June 19, 2002, two months after returning from his FMLA leave. The stated reason for his termination was disruptive behavior arising from his previous dispute with Ken Allen, the argument with Cote, and his comments in the counseling session. Plaintiff claims that he was fired in retaliation for using his FMLA leave. Defendant requests summary judgment.

### **Standard**

Summary judgment is proper if "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The trial court must resolve all reasonable doubts in favor of the party opposing the motion. *Casey Enters, Inc. v. Am. Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981)(citations omitted). The party seeking summary judgment carries the burden of demonstrating that there is no actual dispute as to any material fact in the case. This burden, however, does not require the moving party to produce evidence showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The moving party satisfies its burden by "pointing out to the district court... that there is an absence of evidence to support the nonmoving party's case." *Id*.

Once the moving party has satisfied its burden, the nonmovant must "set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). If the nonmovant fails to set

forth specific facts in support of allegations essential to that party's claim and on which that party will bear the burden of proof, then summary judgment will be appropriate. *Celotex*, 477 U.S. at 323. Even if the nonmovant brings forth evidence in support of its allegations, summary judgment will be appropriate "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986)(citations omitted).

## Analysis

The FMLA requires covered employers to provide an employee suffering from a serious health condition that renders the employee unable to perform the functions of his job 12 weeks of unpaid leave per year. 29 U.S.C. § 2612(a)(1)(D). Furthermore, employers have a proscriptive duty not penalize an employee for exercising his rights under the FMLA. *Chaffin v. John H. Carter Co., Inc.* 179 F.3d 316 (5th Cir. 1999). Plaintiff does not argue that he was disallowed his leave, but rather that Defendant retaliated against him for taking his FMLA leave.

The Fifth Circuit has held that, absent direct evidence of discrimination, FMLA retaliation claims are analyzed under the burden-shifting framework established in *McDonnell Douglas v. Green*, 411 U.S. 792 (1973). *Id.* However, when a Plaintiff concedes that discrimination was not the sole reason for discharge but that discrimination was a motivating factor, the Fifth Circuit applies the mixed-motive analysis derived from *Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003) and adopted by the Fifth Circuit in *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305 (5th Cir. 2004). *Richardson v. Monitronics Int'l, Inc.*, 434 F.3d 327, 333 (5th Cir. 2005). The Court finds that the mixed-motive analysis should be applied to the facts of this case.

To survive summary judgment on a retaliation claim, Plaintiff must first establish a *prima facie* case of by showing: (1) that he exercised his rights under the FMLA; (2) he was terminated; and (3) there is a causal connection between his termination and his use of FMLA leave. *Id.* at 332; *Chaffin*, 179 F.3d at 319. Once Plaintiff has plead a *prima facie* case, the burden shifts to Defendant to offer a legitimate, non-retaliatory reason for its decision to terminate Plaintiff. *Richardson,* 434 F.3d at 332; *Chaffin*, 179 F.3d at 320. If Defendant succeeds in so doing, the presumption of retaliation disappears, and Plaintiff must prove by a preponderance of evidence that the reason offered by Defendant either: (1) was not the real reason for Plaintiff's termination, but a mere pretext; or (2) that the employer's reason, while true, was but one reason for the termination and another reason was retaliation. *Richardson*, 434 F.3d at 333. If Plaintiff establishes that retaliation was a motivating factor in his termination, the burden shifts back to Defendant to prove that it would have taken the same action despite any discriminatory animus. *Id.*

There seems to be no dispute that Defendant was a covered employer and that Plaintiff's depression and post traumatic stress disorder rendered him temporarily unable to perform the functions of his job. Plaintiff was, in fact, terminated, and therefore has plead the first two elements of his prima facie case. Defendant disputes, however that Plaintiff has shown a causal connection between his termination and his use of FMLA leave. The Court disagrees. Plaintiff was terminated within 2 months of returning from his FMLA leave. Koralewski yelled at Plaintiff for exercising his leave and told him that "milking" sick leave was a good way to get fired. Furthermore, Plaintiff has offered evidence that other employees, such as Darlene Crouch, Kent Riedel, and Pete Uptmor were terminated shortly after taking sick leave, whereas employees such

as Ken Allen, Koralewski, Billy Nelson, Ron Smith, Wilbert Young, Joe Mitchell, Pam Moss, Richard Menn, and Sidney Patterson were not terminated after having verbal altercations similar to or more severe those between Plaintiff and Allen and Cote.  Furthermore, when Kent Riedel was terminated, he asked Lisa Scott of the ITCC Human Resources Department why so many people who had taken medical leave were being terminated.  She commented that too many people were abusing their medical leave.  The Court finds that the evidence submitted by Plaintiff is more than sufficient to meet the third element of his *prima facie* case.

      Defendant has submitted evidence that Plaintiff was terminated due to "disruptive behavior" stemming from his arguments with Allen and Cote and a comment made in his counseling session that he would yell back if people yelled at him. The Court finds that Defendant has offered a legitimate, non-discriminatory reason for Plaintiff's termination.  However, the Court also finds that Plaintiff has offered sufficient evidence to show that, even using the more stringent *McDonnell-Douglas* standard, "disruptive behavior" was a mere pretext and the real reason for his termination was his use of FMLA leave.  Plaintiff has offered evidence of a very abrasive office environment where cursing and yelling were commonplace and employees were rarely if ever terminated for outbursts such as Plaintiff's.  Defendant has failed to show that Plaintiff's work performance was lacking but only argues that he was disruptive.  However, Mary Pat Cote, who admitted to being equally culpable in her altercation with Plaintiff, was never disciplined, whereas Plaintiff was ultimately terminated as a result of the altercation.  Ken Allen, who was written up numerous times over a period of years for cursing and yelling at employees, was only terminated after being accused of groping a female employee.  Plaintiff's evidence cites numerous disputes between employees involving behavior more disruptive than that for which he

7

was fired, and those employees were not generally terminated for their actions.

Furthermore, Plaintiff has shown that his supervisor, Koralewski specifically told him that, in no uncertain terms, he could be terminated for 'milking" his sick leave. Kent Riedel was specifically told by Lisa Scott of the ITCC Human Resources department that people who used medical leave were being terminated because "too many of them…we[re] abusing it." The Court therefore finds that Plaintiff has met his burden, not only under the mixed-motive standard, but also under the more stringent *McDonnell-Douglas* standard. In fact, the Court finds that, absent any of the other evidence submitted by Plaintiff, the statements made by Koralewski upon Plaintiff's return to work are sufficient to create a fact issue as to whether the proffered reason for Plaintiff's termination was mere pretext. *See Richardson*, 434 F.3d at 335. At this stage, Defendant has failed to meet its burden of proving that it would have terminated Plaintiff absent discriminatory animus.

## RECOMMENDATION

Based upon the foregoing, the Court finds that Defendant's Motion for Summary Judgment should be DENIED.

Within ten (10) days after receipt of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C.A. § 636(b)(1)(C).

Failure to file written objections to the proposed findings and recommendations contained in this report within ten days after service shall bar an aggrieved party from *de novo* review by the district court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the district court except on grounds of plain error or manifest

injustice.  *Thomas v. Arn*, 474 U.S. 140, 148 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir. 1988).

**SIGNED this 14th day of March, 2006.**

_____
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE